UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M<small>ICHAEL</small> W<small>INKLER</small>,

   Plaintiff,           Hon. Hala Y. Jarbou

v.                Case No. 1:20-cv-622

C<small>OMMISSIONER OF</small> S<small>OCIAL</small>
S<small>ECURITY</small>,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

   The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 56 years of age on his alleged disability onset date. (PageID.205). Plaintiff successfully completed high school and worked previously

as an installer. (PageID.51). Plaintiff applied for benefits on July 24, 2018, alleging that he had been disabled since July 1, 2017, due to back pain, fatigue, headache, "memory issues," "constant flu symptoms," shoulder "problems," "pain in all [his] joints," "possible" fibromyalgia, "mild" vision problems, and tinnitus. (PageID.205-06, 225).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Cynthia Harmon, in an opinion dated November 14, 2019, determined that Plaintiff did not qualify for disability benefits. (PageID.42-104). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision. (PageID.33-37). Plaintiff later initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) lumbar spine degenerative disc disease with spondylosis and Schmorl's nodes; (2) fibromyalgia; and (3) left shoulder total rotator cuff tear and impingement, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.44-46).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform medium work subject to the following limitations: (1) he can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) he can occasionally balance, stoop, kneel, crouch, and crawl; (3) he must avoid concentrated exposure to extreme cold, heat, humidity, and

vibration; (4) he can occasionally reach overhead with his left upper extremity; and (5) he can perform simple routine tasks which do not involve complex decision making or judgment. (PageID.46).

The ALJ found that Plaintiff could not perform his past relevant work, at which point the burden shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid*.

In this case, a vocational expert testified that there existed approximately 3.7 million jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.98-103). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Plaintiff's Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his

ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

The ALJ found that Plaintiff retained the ability to perform a limited range of medium work. Plaintiff advances two arguments challenging the ALJ's RFC assessment. First, Plaintiff argues that limiting him to occasional stooping and crouching precludes the performance of medium level work. Next, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence.

Taking the latter argument first, the evidence supports the ALJ's RFC assessment. Treatment notes dated October 3, 2017, indicate that Plaintiff was not experiencing back pain, joint pain, or muscle weakness. (PageID.345). The results of examinations conducted shortly thereafter likewise revealed "normal gait," "no exercise intolerance," and no evidence of muscle weakness or limited range of motion. (PageID.463-66). Treatment notes dated May 14, 2018, indicate that Plaintiff exhibited "full range" of spinal motion with no evidence of joint abnormality. (PageID.580-81). Plaintiff's symptoms, which were characterized as "moderate," were relieved with marijuana and over-the-counter medication. (PageID.579).

On May 24, 2018, Plaintiff's chiropractor noted that Plaintiff exercises daily. (PageID.472). Plaintiff later reported that chiropractic treatment improved his back pain. (PageID.474). The results of a July 19, 2018, physical examination were unremarkable. (PageID.618-19). Plaintiff "move[d] all extremities appropriately with 5/5 strength" and exhibited a "normal" gait. (PageID.619).

Treatment notes dated August 15, 2018, indicate that a "general joint exam is normal with full range of motion." (PageID.593). Plaintiff reported that he was not experiencing any activity-related limitations. (PageID.591). On September 4, 2018, Plaintiff reported that he was travelling to Colorado. (PageID.487).

On September 27, 2018, Plaintiff participated in a consultive examination the results of which were unremarkable. (PageID.489-92). Plaintiff reported that he can "consistently" lift fifteen pounds. (PageID.489). Plaintiff exhibited limited range of motion, but straight leg raising was negative. (PageID.490). Plaintiff exhibited no muscle weakness, sensory impairment, or difficulty performing postural maneuvers. (PageID.490-91). Plaintiff exhibited a "normal" gait without the need for an assistive device. (PageID.492). The results of a cardiac and pulmonary examination were "essentially normal." (PageID.492).

On October 30, 2018, Plaintiff reported that he "walks for exercise." (PageID.567). Treatment notes dated February 20, 2019, indicate that Plaintiff was not experiencing any limitations on his activities. (PageID.599). The results of a physical examination were unremarkable and it was noted that Plaintiff's symptoms are improved with marijuana and over-the-counter medication. (PageID.599-602). Treatment notes dated April 5, 2019, indicate that Plaintiff exhibited 5/5 strength and was able to move all his extremities without difficulty. (PageID.650). Plaintiff also exhibited a "normal" gait. (PageID.650). A May 17, 2019 examination produced similar results. (PageID.659). X-rays of Plaintiff's lumbar spine, taken July 8, 2019, revealed "mild to moderate" findings.

(PageID.665). An MRI of Plaintiff's lumbar spine, performed August 5, 2019, revealed "normal anatomic alignment" with "no compression abnormalities" and "no evidence for nerve root compression." (PageID.776-77).

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute her own opinion for that of a medical professional, the ALJ is not required to tailor her RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. Accordingly, this argument is rejected.

As for Plaintiff's argument that the ALJ erred by characterizing his RFC as "medium" work rather than "light" work, the Court is not persuaded. As noted, the ALJ limited Plaintiff to only occasional stooping and crouching. Plaintiff argues that for his RFC to properly be characterized as "medium," he must able to stoop and crouch "frequently." In support of this argument, Plaintiff cites to Social Security Regulation 83-10. *See* Titles II and XVI: Determining Capability to do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 (S.S.A.1983). This regulation indicates that "frequent bending-stooping" is

required to perform the *full range* of medium work. *Id.* at \*6. The ALJ, however, restricted Plaintiff to a *limited* range of medium work. Plaintiff has identified no authority standing for the proposition that a claimant's RFC is improperly characterized as "medium" simply because he is limited to only occasional stooping and crouching. Accordingly, this argument is rejected.

## II. Treating Physician Doctrine

Plaintiff also argues that the ALJ erred by failing to afford controlling weight to the opinions of his treating physician. This argument is rejected for two reasons. First, Plaintiff has failed to identify the opinion in question and has, therefore, waived any argument regarding such. Second, the ALJ's assessment of the opinion evidence is supported by substantial evidence.

### A. Waiver

In his brief, Plaintiff argues that the ALJ failed to properly consider the opinions of his "treating physician." (ECF No. 19 at PageID.787-90). Plaintiff never identifies the physician in question by name. Plaintiff has cited to the record throughout his argument. While such might be expected to perhaps provide some insight for the basis of Plaintiff's argument, Plaintiff has failed to properly cite to the record. For example, Plaintiff, in making reference to the ALJ's decision, cites on multiple occasions to "PageID.18" as well as to "PageID.16, 17, 19." (ECF No. 19 at PageID.788-90). These pages do not refer to the ALJ's decision, but instead refer to Defendant's motion for extension of time to file the administrative record. (ECF No. 8). In other portions of his argument, Plaintiff attempts to cite to material

created during the administrative process, but he instead cites to his own administrative hearing testimony. (*See* ECF No. 19 at PageID.788-89 (citing to PageID.81-82)).

Simply put, by failing to clearly identify the treating physician whose opinion is at issue or properly cite to the record, the Court is left to attempt to piece together Plaintiff's argument. It is not this Court's role, however, to surmise the basis for Plaintiff's argument or guess as to the portions of the record which allegedly support such. *See, e.g., Emerson v. Novartis Pharm. Corp.*, 446 Fed. Appx. 733, 736 (6th Cir., Aug. 23, 2011) ("judges are not like pigs, hunting for truffles that might be buried in the record"). Accordingly, the Court finds that Plaintiff has waived this argument. *See, e.g., United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2014) (asserting a claim "in a perfunctory manner, unaccompanied by some effort at developed argumentation" constitutes waiver of such claim). Even if the Court overlooks Plaintiff's failure to properly develop this argument, the result is the same.

B.   Chiropractor House's Opinion

Part of the difficulty in attempting to surmise the basis for Plaintiff's argument is that Plaintiff repeatedly refers to the opinion of his "treating physician." But, because Plaintiff filed his application after March 27, 2017, the treating physician doctrine does not apply. *See, e.g., Jones v. Berryhill*, 392 F.Supp.3d 831, 839 (M.D. Tenn. 2019). Moreover, even if the previous regulations and analysis did apply, there is no indication that any "treating physician" offered an opinion in this matter. The ALJ did evaluate the opinions offered by Plaintiff's chiropractor,

-10-

Ronald House. A chiropractor, however, was not properly characterized as a treating physician under the previous framework. *See* 20 C.F.R. § 404.1502; *Lynch v. Saul*, 2020 WL 264260 at *13 (N.D. Ohio, Jan. 17, 2020) ("a chiropractor is not an acceptable medical source"). Nonetheless, judging from Plaintiff's argument and the ALJ's opinion, it appears that Plaintiff is challenging the ALJ's assessment of Chiropractor House's opinion. The Court will proceed as if such is the case.

On August 14, 2019, House completed a "Medical Source Statement" in which he opined that Plaintiff could work subject to the following limitations: (1) Plaintiff can lift/carry 10 pounds frequently and 50 pounds occasionally; (2) Plaintiff can occasionally stoop, reach, push/pull, and operate foot controls; (3) Plaintiff can continuously perform handling/fingering tasks; (4) during an 8-hour workday, Plaintiff can sit for 4 hours and stand/walk for 2 hours each; (5) Plaintiff requires the use of a "handheld assistive device" such as a cane or walker; and (6) Plaintiff would be absent from work "5 or more" days each month. (PageID.768-71).

As noted, Plaintiff's argument is not governed by the treating physician doctrine. Instead, the ALJ's assessment of House's opinion is governed by 20 C.F.R. § 416.920c which provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even those from treating sources. *See, e.g., Jones*, 392 F.Supp.3d at 839. Instead, the ALJ must assess a medical opinion pursuant to the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or

-11-

contradict the opinion. Of these factors, supportability and consistency are the most important. *Ibid*.

In support of her decision to discount House's opinions, the ALJ articulated several reasons. First, the ALJ noted that House's opinions were inconsistent with the medical record. (PageID.50). The ALJ also noted that there is no support in the record for the conclusion that Plaintiff requires an assistive device to ambulate. (PageID.50-51). Regarding the opinion that Plaintiff would miss five or more days of work each month, the ALJ noted that House "gave no explanation for such extreme limitations." (PageID.51). The ALJ observed that House's opinion that Plaintiff was limited due to "chronic pain" was "vague and subjective." (PageID.51). Finally, the ALJ noted that House did not perform any diagnostic testing to support his opinions. (PageID.51). The ALJ's rationale complies with the relevant standard and is supported by substantial evidence. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

Date: September 7, 2021                    /s/ Phillip J. Green
                                                      PHILLIP J. GREEN
                                                      United States Magistrate Judge